UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRIEN WILLIAMS MATTHEWS,

    Plaintiff/Counter-defendant,

                                                                                            Case Number 06-14875-BC
v.                                                              Honorable Thomas L. Ludington

GEORGE WESTON BAKERIES
DISTRIBUTION, INC.,

    Defendant/Counter-claimant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND DENYING WITHOUT PREJUDICE
DEFENDANT'S MOTION *IN LIMINE***

On October 27, 2006, Defendant George Weston Bakeries Distribution, Inc. removed this case from state court, pursuant to 28 U.S.C. § 1441. Plaintiff Brien Williams brought this case, alleging breach of contract and tortious interference with an advantageous business relationship, and he requested "an accounting." Defendant subsequently filed a counterclaim, alleging separate counts for conversion, unjust enrichment, fraud, and breach of contract.

Both parties timely filed motions for summary judgment under Federal Rule of Civil Procedure 56. Defendant also filed a motion *in limine* to exclude expert testimony, which it then withdrew at the hearing on September 19, 2007.

On March 15, 2004, Plaintiff entered into a distribution agreement with Defendant, who retails baked goods, such as Entenmann's and Boboli products. The contract provides that Defendant would sell products to Plaintiff and that Plaintiff would develop and maximize sales of

products within his sales area, as well as deliver those products.

Regarding the sale and delivery of those products, the contract provided that Plaintiff would buy and accept sufficient quantities to supply outlets in the relevant sales area and that Defendant would use commercially reasonable means to fulfill Plaintiff's orders. *Agreement*, § 3.2, Dft. Br., Ex. A [dkt #16-2]. As a part of handling the possibility of excess product, the parties agreed, in § 3.2 of the contract:

> [Defendant] further agrees to accept and give full credit for any damaged or off code Product which is not damaged or off code by reason of [Plaintiff's] negligence, and which has been promptly returned in accordance with [Defendant's] then current stale and damage return policy. [Defendant] reserves the right to make reasonable amendments to such stale and damage return policy from time to time.

*Id*. They also agreed that, "[o]n or before Friday of each week, [Plaintiff] would remit to [Defendant] the purchase price of products delivered to [Defendant] during the preceding week, less credit for any off code or damaged Products which have been returned in accordance with § 3.2 above." *Id*. at § 3.4. In particular, Plaintiff agreed to "rotat[e] Products to promote their sale before they become stale or off code; [to] promptly remov[e] all stale or off code Products; . . . [and to] provid[e] service on a basis consistent with good industry practice to all Outlets requesting service in the Sales Area." *Id*. at § 4.1. Also, Plaintiff agreed to operate the business in compliance with federal, state, and local law. *Id*. at § 4.2.

In Article 8 of the agreement, the parties set out the terms for termination of the agreement. They defined a non-curable breach as follows:

> If the breach by [Plaintiff] involves criminal activity or fraud, threatens public health or safety, or threatens to do significant harm to [Defendant] . . . , its trademarks or commercial reputation, [Defendant] may terminate this Agreement immediately upon written notice and [Plaintiff] shall have no right to cure.

*Id*. at § 8.2. They set out the procedure for resolving a curable breach as follows:

> In the event of a breach by [Plaintiff] other than under § 8.2, [Defendant] shall give [Plaintiff] three (3) business days written notice within which [Plaintiff] may cure the breach. If [Plaintiff] fails to cure such breach within said three (3) day period, [Defendant] may thereafter terminate this Agreement and [Plaintiff] shall have no further right to cure; provided, further, that the parties agree that repeated violations constitute a chronic breach and threaten significant harm to Defendant, . . . its trademarks or commercial reputation, and in such event [Defendant] shall be entitled to terminate this Agreement pursuant to § 8.2 and [Plaintiff] shall have no further right to cure.

*Id*. at § 8.3.

If termination for either type of breach occurred, the parties agreed that Defendant would operate the business for the account of Plaintiff and would deduct reasonable expenses from any revenues, which would then be delivered to Plaintiff. *Id*. at § 8.4. Upon termination, Plaintiff was required to sell his distribution rights, and if he did not do so within 90 days, Defendant was authorized to sell those distribution rights "at the best price which [could] be obtained after proper notice and advertisement." *Id*. Additional terms, such as allowing for the satisfaction of any outstanding debts, liens, security interests, or legal fees or requiring the execution of transfer documents, also applied. *See id*. at §§ 8.4, 6.3, 6.4.

According to the terms of the agreement, Defendant would "accept and give full credit for any damaged or off code Product" that Plaintiff's negligence did not cause to be damaged or off code and that Plaintiff "promptly returned in accordance with [Defendant's] then current stale and damage return policy." *Id*. at § 3.2. Plaintiff acknowledged that he knew that Defendant did not want outdated product on which he had received credit to be resold.

The manager of a discount food store, Jim Krevinghaus, in a declaration, confirmed that he entered into an agreement with Plaintiff to purchase outdated product from Plaintiff. According to Krevinghaus, Plaintiff delivered 20 to 30 trays of outdated product to that store on a weekly basis,

from December 2005 to May 2006. Allegedly, that store sold those products at half-price, and then paid Plaintiff half of that price. Krevinghaus terminated that arrangement when further communication with Defendant revealed that those sales were unauthorized. In his deposition, Plaintiff acknowledged, as did his counsel at the hearing, that Plaintiff did sell outdated product to that store and that he had received repayment for that product from Defendant. Plaintiff , however, did take issue with the amount of outdated product that Defendant alleges he sold after receiving compensation for it.

On June 12, 2006, Defendant terminated the distribution agreement, stating that Plaintiff had breached the contract by selling outdated product to a store without authorization. Defendant's letter to him states that, although he denied selling stale product to that store, the store owner confirmed it. Defendant also reminded him that he had 90 days to sell his distribution rights, after which time Defendant would do so. Defendant also stated that it would operate the business until the rights were sold, and the costs of operations would be deducted from the weekly settlements and the proceeds of the sale of the distribution rights. After 90 days had passed and when Plaintiff had not sold his distribution rights, Defendant proceeded to sell those rights.

Plaintiff does not dispute any of the foregoing. Instead, he asserts that his breach was a curable breach because two other distributors engaged in similar conduct but did not have their distribution rights terminated. Plaintiff also objects to the purported vagueness or inaccuracy in Defendant's damages figures and its lack of an expert to attest to the amount of damages. Indeed, most of his argument focuses on the amount due to him from the sale of his former distribution rights, and he maintains that he is still due $9,338. Finally, Plaintiff contends that Defendant's distribution agreement did not prohibit the sale of stale product, by relying on the testimony of

Defendant's region manager, Paul Maguire.

To reiterate, Plaintiff, in his complaint, alleges claims of breach of contract and tortious interference, and he requested an accounting. Defendant, in its counterclaim, alleges conversion, unjust enrichment, fraud, and breach of contract. Both parties have filed motions for summary judgment.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

First, the Court must consider Plaintiff's claim of breach of contract. In § 11.8 of the distribution agreement,[1] the parties agreed that New York law governs the contract. Similar to

---

[1] Section 11.8 of the distribution agreement provides:

CONTROLLING LAW: The validity, interpretation and performance of this

Michigan law, New York common law states, "[W]hen parties set down their agreement in a clear, complete document, their writing should … be enforced according to its terms." *Vermont Teddy Bear Co., Inc. v. Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (citations and internal quotations omitted); *see also Welsbach Electric Corp. v. MasTec North America, Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006) ("Where an agreement is clear and unambiguous, a court is not free to alter it and impose its personal notions of fairness.").

Here, the parties do not contest the existence of the contract or the meaning of the terms. Importantly, the terms are unambiguous and unequivocal, so those terms must simply be applied to the largely uncontested facts described by the parties. Defendant learned from the principal of a particular grocery store that Plaintiff had sold outdated products to that store. Plaintiff acknowledged doing so in his deposition, and he also acknowledged that he received credit for those items. Consequently, Plaintiff failed to "promptly return" outdated product on which he received payment, in breach of § 3.2 of the agreement. Further, Plaintiff's sale of outdated inventory did "threaten . . . to do significant harm" to Defendant, in violation of § 8.2. Defendant sought to have its outdated product out of circulation, and it paid Plaintiff to realize that end. Given the unambiguous terms and the unchallenged facts of Plaintiff's conduct, Defendant is entitled to judgment as a matter of law on Plaintiff's claim of a breach of contract, to the extent that Plaintiff advances that claim based on the termination of Plaintiff's distribution rights.

Plaintiff's attempt to show a discrepancy between Defendant's treatment of his circumstance and the circumstance of other distributors (who also, allegedly, resold outdated product for which

---

Agreement shall be controlled by and construed in accordance with the laws of the State of New York.

they received credit) has no relevance to assessing Plaintiff's obligations under the contract. Plaintiff's obligations under the contract remain as the parties set them out in the contract, regardless of whether other distributors to potentially similar contracts also fell short of their obligations. While Defendant may note that Plaintiff's cooperation provided it with superior information to pursue any claims against him, Defendant's decisions regarding how to address deficiencies in its business relationship with other distributors does not inform on the agreement between Plaintiff and Defendant.

Second, Plaintiff seeks an accounting of the Defendant's sale of the distribution rights, as permitted by the contract. Although plead as a distinct cause of action, seeking an accounting is not distinct from challenging Defendant's sale of the distribution rights, pursuant to § 8.4 of the agreement. Still, Plaintiff has raised factual issues regarding the proper amount due to him upon the sale of his distribution rights. The contract provides for Defendant to handle distribution after termination and, absent a sale by Plaintiff, for Defendant to sell those distribution rights. *Agreement*, § 8.4. Whether Plaintiff was properly and completely compensated upon the sale of his former distribution rights remains unresolved. Accordingly, the Court will not grant Defendant summary judgment on Plaintiff's claim of a breach of contract, to the extent that the alleged breach is based on establishing the amount due to Plaintiff for the operation of the distribution route and for the sale of the distribution rights after the termination.

Third, Plaintiff asserts a claim of tortious interference with his business relationships. In New York, tortious interference includes "inducing breach of a binding agreement and interfering with a nonbinding 'economic relation.'" *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004). If an enforceable contract exists and the defendant deliberately interferes in a manner that

results in a breach, then the plaintiff can recover. *Id*. (citation omitted). If the defendant interferes, not with an existing contract but with prospective contract rights, then the plaintiff must show that the defendant engaged in either a crime or an independent tort. *See id*.

Here, Plaintiff has not identified a breach or any "deliberate interference" by Defendant. Plaintiff cannot state a cause of action based on business relationships derivative of this contract, when Defendant's only actions were pursuant to the terms of that contract. Apart from issues pertaining to the accounting of the sale of the distribution rights, Plaintiff has advanced no factual basis for concluding that Defendant's actions in terminating his distribution rights, and the consequent effect on his business relationships with his customers, were anything but consistent with Plaintiff and Defendant's agreement. Plaintiff also suggests that the termination of his distribution rights interfered with prospective contract rights. Not only has Plaintiff not identified what those rights might be (or from whom he might have received them), he has provided no evidence that either a crime or an independent tort occurred, as required under *Carvel*. Consequently, Plaintiff's failure to establish a factual or legal predicate for his claim of tortious interference eliminates any question that would require submission to a jury and results in a conclusion so one-sided that Defendant must prevail as a matter of law.

Fourth, turning to Defendant's counterclaim, it there asserts a claim for fraud. Similar to Michigan's non-economic loss doctrine as outlined in *Neibarger v. Universal Cooperatives, Inc*., 486 N.W.2d 612 (Mich. 1992), under New York law, "no cause of action to recover damages for fraud arises when the only fraud alleged relates to a breach of contract." *S.S.I.G. Realty, Inc. v. Bologna Holding Corp.*, 213 A.D.2d 617, 618-619 (N.Y. App. Div. 1995) (citation omitted). Consequently, Defendant cannot advance a claim for fraud arising out of any breach of the contract,

so Plaintiff is entitled to judgment as a matter of law on Defendant's counterclaim for fraud.

Fifth, Defendant asserts a counterclaim for unjust enrichment. Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987). This bar includes claims for unjust enrichment. *See id.*; 172 A.D.2d 27, 32 (N.Y. App. Div. 1991) (stating that "unjust enrichment is a quasi contract claim"). Consequently, Defendant cannot advance a claim for unjust enrichment, where a valid and enforceable written contract governs the matters at issue. Thus, Plaintiff is entitled to judgment as a matter of law on Defendant's counterclaim for unjust enrichment.

Sixth, the parties have provided little factual development for Defendant's counterclaim of conversion and given little attention to the economic development of Defendant's counterclaims of breach of contract and conversion. In ¶¶ 9 and 19 of Defendant's counterclaim, Defendant appears to claim that Plaintiff not only recovered money for outdated product that he had not destroyed, but he also took other of Defendant's products, possibly fresh product, and sold them without first purchasing them. Although Plaintiff provides some legal authority regarding conversion in its motion, he has not addressed this factual allegation. In light of the foregoing analysis of Plaintiff's likely breach of contract and absent any further legal or factual development on the conversion claim, the Court cannot grant summary judgment to Plaintiff on Defendant's counterclaims for breach of contract or conversion at this juncture.

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [dkt #16] is **GRANTED IN PART** and **DENIED IN PART**. The claims for tortious interference and for breach

of contract, to the extent based on the termination of the rights under the agreement, are **DISMISSED WITH PREJUDICE**, but the claim for breach of contract and the associated request for an accounting, to the extent based on establishing the amount due to Plaintiff for the operation of the distribution route and for the sale of the distribution rights after the termination, remain.

It is further **ORDERED** that Plaintiff's motion for summary judgment [dkt #18] is **GRANTED IN PART** and **DENIED IN PART**. Counts II and III of Defendant's counterclaim, for unjust enrichment and fraud, are **DISMISSED WITH PREJUDICE**, but counts I and IV, for conversion and breach of contract, remain.

It is further **ORDERED** that Defendant's motion *in limine* [dkt #17] is **DENIED WITHOUT PREJUDICE** as moot after Defendant withdrew it.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: October 9, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 9, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---